UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE L. CARADINE,

        Petitioner,

                                           Civil Case No. 18-13052

v.                                    Honorable Linda V. Parker

SHANE JACKSON,

        Respondent.

_____/

## OPINION & ORDER (1) DENYING PETITIONS FOR WRIT OF HABEAS CORPUS; (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

       This is a habeas case brought pursuant to 28 U.S.C. § 2254. Dwayne L. Caradine ("Petitioner"), a state prisoner in custody of the Michigan Department of Corrections, filed a pro se petition and an amended petition for the writ of habeas corpus. (ECF Nos. 1, 3.) The petitions challenge his conviction and sentence for one count of criminal sexual conduct ("CSC") in the third degree. In the initial petition, Petitioner argues that the state trial court erred by denying his motion to withdraw his no-contest plea. (ECF No. 1.) In the amended petition, Petitioner appears to argue that the prosecutor's retroactive application of a state-court decision regarding Michigan's habitual offender statutes violated his rights under

ex post facto laws.  (ECF No. 3.)  Petitioner's claims lack substantive merit.

Accordingly, the Court denies the initial and amended habeas petitions.

## I.  Background

Petitioner was charged in the Circuit Court for Macomb County, Michigan

with one count of third-degree CSC, Mich. Comp. Laws § 750.520d(1)(b) (sexual

penetration of another person, using force or coercion).  On November 14, 2016,

Petitioner pleaded no contest to the charge.  (ECF No. 9-9.)  There was no plea

agreement, and Petitioner acknowledged his prior state court convictions of armed

robbery, felon in possession of a firearm, and felony firearm.  (*Id*. at Pg ID 155-56,

158.)  Due to these prior felony convictions and the charge of third-degree CSC

being defined as a "serious crime", Petitioner was characterized as a fourth

habitual offender and subject to a mandatory minimum sentence of 25 years.  (*Id*.

at Pg ID 155); *see also* Mich. Comp. Laws § 769.12.

The stipulated factual basis for Petitioner's no-contest plea was the warrant

authorization.  The trial court concluded from the document that there was a

factual basis for the charge because Petitioner used force or coercion to engage in

oral sex with the complaining witness.  (ECF No. 9-9 at Pg ID 156-57.)

At Petitioner's sentencing on December 21, 2016, defense counsel stated on

the record that he had explained the mandatory minimum sentence of 300 months

to Petitioner.  (ECF No. 9-10 at Pg ID 164.)  At the time, defense counsel inquired

whether sentencing for the third-degree CSC conviction would run concurrent to the sentence Petitioner already was serving for a separate unrelated offense.  (*Id.*) The trial court indicated that sentencing would be concurrent.  (*Id.*)  Later in the sentencing, Petitioner was given an opportunity to allocute.  Although Petitioner claimed to understand that there was no plea agreement, he told the trial court that he was not receiving anything for his no-contest plea and that he thought he was going to be sentenced on the third-degree CSC count to no more than the three years he was currently serving.  (*Id*. at Pg ID 171-73.)

Defense counsel then informed the trial court that he had never misled a client, and the prosecutor stated that the reason for the mandatory minimum sentence of 25 years was that Petitioner was a fourth habitual offender.  (*Id.* at Pg ID 173-74.)  When Petitioner continued to maintain that his attorney had not informed him about his anticipated sentence being more than three years, the trial court suggested that defense counsel speak with Petitioner.  (*Id.* at Pg ID 173-75.) After a brief recess in the proceeding, defense counsel stated that he and Petitioner had discussed the sentence very carefully when Petitioner was first brought over from prison.  (*Id*. at Pg ID 175-76.)  The Petitioner disagreed with that statement and said that he knew what his lawyer had told him.  (*Id.* at Pg ID 176.)

After hearing these final statements from the Petitioner and his counsel, the trial court concluded the Petitioner understood the charge and the sentence at the

time of his plea.  The court then sentenced Petitioner as a fourth habitual offender to imprisonment for 300 to 600 months (25 to 50 years).  (*Id.* at Pg ID 176.)  The court ordered the sentence to run concurrently with the sentence Petitioner already was serving.  (*Id.*)

On June 14, 2017, Petitioner moved to withdraw or set aside his plea and sentence.  (ECF No. 9-1 at Pg ID 78.)  At the motion hearing on July 17, 2017, Petitioner argued through counsel that there was no benefit to pleading no-contest and that he had a valid defense to the charge, namely, that the sexual encounter with the complainant was consensual.  (ECF No. 9-11 at Pg ID 185-86.)  The trial court denied Petitioner's motion on the grounds that the plea was not defective, that the court had twice informed Petitioner at the plea that there was a 25 year mandatory sentence, and that Petitioner had understood the trial court.  (*Id.* at Pg ID 187.)

On August 7, 2017, Petitioner filed a delayed application for leave to appeal, claiming that the trial court had erred by denying his motion to withdraw his no-contest plea.  He argued that he did not voluntarily plead no-contest to the charge, that he was offered nothing for his plea, that he had a valid defense, and that he would have gone to trial if he had known that he was going to receive a mandatory sentence of 25 years.  (ECF No. 9-12 at Pg ID 192, 203-04.)  He also alleged that he was denied effective assistance of counsel because his attorney represented to

4

him that he would receive a sentence of three years.  (*Id*. at 192, 202-03, 205.)  The Michigan Court of Appeals denied Petitioner's delayed appeal "for lack of merit in the grounds presented."  *People v. Caradine*, No. 339616 (Mich. Ct. App. Sept. 25, 2017).

On May 21, 2018, Petitioner signed a pro se application for leave to appeal in the Michigan Supreme Court.  (ECF No. 9-13 Pg ID 246.)  He claimed once again that the trial court erred in denying his motion to withdraw his no-contest plea.  (*Id*. at Pg ID 246.)  He supported this claim with allegations that his plea was not knowingly and voluntarily made, that his trial attorney labored under a misconception of the law, and that he was sentenced as a fourth habitual offender in violation of ex post facto laws.  (*Id*. at Pg ID 246-49.)  The Michigan Supreme Court received Petitioner's application on May 24, 2018, and returned the application on May 29, 2018, without filing it, because it was untimely under Michigan Court Rule 7.305(C)(2).  (*Id*. at Pg ID 244.)

Petitioner alleges that he subsequently filed a post-conviction motion for relief from judgment in which he argued that:  (1) he was denied due process and equal protection of the law because his three prior convictions arose out of a single transaction and should have been counted as a single conviction for purposes of Michigan's habitual offender statute; and (2) his trial attorney provided ineffective assistance by inducing an illusory plea agreement.  (ECF No. 1 at Pg ID 3.).  The

state trial court denied the motion on July 17, 2017.  (ECF No. 9-1 at Pg ID 79.)

Petitioner then wrote to the trial court and requested a remand for resentencing due

to an allegedly invalid and void sentence.  (*Id*. at Pg ID 79-80.)  The trial court

denied that motion on August 9, 2018.  (*Id*. at Pg ID 80.)

On September 28, 2018, Petitioner filed his initial habeas corpus petition in

this case.  (ECF No. 1.)  Petitioner argues that the trial court erred by denying his

motion to withdraw his no-contest plea and that his prior convictions which arose

out of a single transaction should have been counted as a single conviction.  (*Id*. at

Pg ID 5-6.)

On October 3, 2018, Petitioner filed an amended habeas corpus petition

expanding on the previously raised grounds.  (ECF No. 3.)  Petitioner argues in the

amended petition that he should not have been sentenced as a fourth habitual

offender because his 1998 convictions for armed robbery, felon in possession of a

firearm, and felony firearm arose out of a single transaction and count as one prior

conviction for purposes of Michigan's habitual offender statute.  (*Id*. at Pg ID 16-

19.)  Petitioner also appears to argue in the amended petition that his no-contest

plea was not voluntary or knowing and that the plea agreement was defective

because he did not fully understand the consequences of his plea.  (*Id*. at Pg ID 23-

25.)

Respondent answered the habeas petition in opposition.  (ECF No. 8.)

Respondent understood the petition to assert the sole claim that the trial court erred

by denying Defendant's motion to withdraw his no contest plea.  (*Id*. at Pg ID 35.)

The answer did not address any argument raised about the habitual offender

conviction.  Respondent urges the Court to deny the habeas petition because

Petitioner's ground for relief is unexhausted and because the Michigan Court of

Appeals reasonably rejected the claim on the merits.  (*Id*. at Pg ID 49-50.)

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)

imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
> (1)    resulted in a decision that was contrary to, or
>         involved an unreasonable application of, clearly
>         established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an
>         unreasonable determination of the facts in light of
>         the evidence presented in the State court
>         proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could

have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Exhaustion of State Remedies

A preliminary question is whether Petitioner exhausted state remedies for his claims. The doctrine of exhaustion of state remedies requires state prisoners to give the state courts an opportunity to act on their claims before the claims are presented to a federal court in a habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This requirement is satisfied if the prisoner "invok[es] one complete round of the State's

established appellate review process," including a petition for discretionary review in the state supreme court "when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan*, 526 U.S. at 845, 847.

Thus, "[i]n states such as Michigan with a two-tiered appellate system—that is, those that have both an intermediate appellate court and a state supreme court— a petitioner must present his claims to the state supreme court in order to satisfy this exhaustion requirement." *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020), *cert. denied*, No. 19-8375, 2020 WL 6385783 (U.S. Nov. 2, 2020); *see also Wagner v. Smith,* 581 F.3d 410, 414-15 (6th Cir. 2009) (explaining that, to properly exhaust state remedies, the applicant must have fairly presented the factual and legal basis for each claim to the state court of appeals and to the state supreme court before raising the claims in a federal habeas corpus petition). A habeas petition containing any unexhausted claims ordinarily must be dismissed. *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982).

Petitioner's claims are unexhausted because he did not fairly present them to each level of the state courts. Although he attempted to file an application for leave to appeal in the Michigan Supreme Court, he submitted his application months after the deadline for doing so, and it was returned to him unfiled because it was untimely under Michigan Court Rule 7.305(C)(2).

The exhaustion rule, however, is not a jurisdictional requirement, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and a federal district court may deny a habeas petition on the merits, despite the petitioner's failure to exhaust available state remedies, 28 U.S.C. § 2254(b)(2).  Accordingly, the Court proceeds to address Petitioner's claims on the merits, rather than dismissing the petition for failure to exhaust state remedies.  Although Petitioner superseded his initial petition when he filed an amended one, *Calhoun v. Bergh*, 769 F.3d 409, 411 (6th Cir. 2014), the Court will treat the amended petition as a supplement to the initial petition and review the claims brought in both the initial petition and in the amended petition.

## B.  The Plea

Petitioner alleges that the trial court erred in denying his motion to withdraw his no-contest plea.  (ECF No. 1 at Pg ID 3, 5.)  However, "[a] defendant does not have an absolute right to withdraw a guilty plea[.]"  *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006); *accord United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012).  For the following reasons, Petitioner has not shown that his plea was involuntary and unknowing.

### 1.  Clearly Established Federal Law

A guilty plea, and by extension a no-contest plea, involves a waiver of several constitutional rights.  *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  Therefore, the plea "must be both knowing and voluntary."  *Parke v. Raley*, 506

U.S. 20, 28 (1992); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (stating that

"[t]he longstanding test for determining the validity of a guilty plea is 'whether the

plea represents a voluntary and intelligent choice among the alternative courses of

action open to the defendant'") (quoting *North Carolina v. Alford,* 400 U.S. 25

(1970)).

To be voluntary and knowing, a plea must be "done with sufficient

awareness of the relevant circumstances and likely consequences."  *Brady v.*

*United States,* 397 U.S. 742, 748 (1970).  Courts can determine the voluntariness

of a plea only by considering all the relevant circumstances.  *Id*. at 749.

A reviewing court should consider such factors as whether the defendant

appreciated the consequences of his waiver of rights, whether he was coerced into

waiving his rights, and whether he understood the rights he was surrendering by

pleading guilty or no contest.  *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir.

2009).  Additional factors to be considered are whether the defendant understood

the essential elements of the offenses to which he was pleading guilty or no contest

and whether he was aware of the maximum sentence to which he was being

exposed.  *Id*. at 408-09.  Failure to ensure that the defendant understands a

mandatory minimum sentence may also render a plea involuntary, "and a plea that

is not voluntary is undoubtedly an impairment of a defendant's substantial rights."

*Martin*, 668 F.3d at 792.

## 2.  Application of the Law

At the plea proceeding on November 14, 2016, Petitioner informed the trial court of his name, that he was 45 years old, and that he could read, write, and understand the English language.  (ECF No. 9-9 at Pg ID 154.)  He informed the court that he was not under any medication, alcohol, or narcotics. (*Id*. at Pg ID 155.)  He also told the court that he understood that his crime, as stated by the trial court, was a  "15-year felony with [a] habitual fourth [which] makes it a life felony… [with a] 25 mandatory life sentence…."  (*Id*. at Pg ID 155.)

In answering the questions posed by the trial court, Petitioner denied that anyone had promised him anything or forced him to plead no contest and answered in the affirmative that he was pleading no contest freely and voluntarily.  (*Id*.)  He answered in the affirmative when asked whether he had reviewed the advice-of-rights form with his attorney and understood the rights he was waiving by pleading no contest.  (*Id*. at Pg ID 155-56.)  He acknowledged that the advice of rights were the rights he would have if he went to trial and that he was going to forego those rights.  (*Id*.)  Petitioner then repeated "yes" when asked whether he understood he was pleading no contest to a life offense with a mandatory term of 25 years.[1]  (*Id*.

---

[1] Although not cognizable on habeas review, the Court notes that the plea colloquy with the Petitioner was lacking in breadth given the mandatory 25 year minimum sentence. Petitioner merely uttered his name, age, and affirmative or negative statements to the court's questions.

at Pg ID 156.)  Petitioner's "[s]olemn declarations in open court carry a strong

presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

At Petitioner's sentencing, his attorney stated that he had explained the

mandatory minimum sentence to Petitioner, that Petitioner had appeared to fully

understand his sentence would be 300 months to 600 months, and that Petitioner's

only concern was that any sentence would be concurrent to the sentences he was

already serving.  (ECF No. 9-10 at Pg ID 164.)  Petitioner then stated that he

thought his attorney had said concurrent sentencing meant his new sentence would

not exceed the three-year sentence he already was serving.  (*Id.* at Pg ID 172.)  His

attorney disagreed, however, and stated that Petitioner had made the same

accusation about his former attorney and that he (the current attorney) had never

misled a client.[2]  (*Id*. at Pg ID 174.)

The attorney also stated that he had looked at the facts and determined that it

was not a good idea to go to trial.  His attorney further stated that when he

informed Petitioner of his conclusion, Petitioner agreed with him.  (*Id.*)  According

to the attorney, Petitioner also chose not to go to trial because he did not want the

_____

[2] On September 1, 2016, Petitioner's previous trial counsel informed the court that he had been in plea negotiations with the prosecutor but that there were some "uncertainties" with the plea agreement and his habitual offender status.  (ECF No. 9-6 at Pg ID 136-140.)  Later during the pre-trial conference, Petitioner requested a new attorney to represent him citing miscommunication as the reason.  (*Id.* at Pg ID 138.)  This motion to withdraw as counsel was granted by the court.  *Id.* at Pg ID 139.)

facts to be placed on the record.  (*Id.*)  The attorney maintained that he had

carefully advised Petitioner about his potential sentence and Petitioner had agreed,

stating that "[i]t is what it is" when they discussed the sentence.  (*Id.* at Pg ID 176.)

To conclude, the record indicates that Petitioner was aware of the

consequences of his no-contest plea, and he answered the trial court, twice, that he

understood the mandatory minimum sentence for his crime.

The state courts reasonably concluded that there was no merit in Petitioner's

claim regarding the voluntariness of his no-contest plea.  Petitioner, therefore, has

no right to habeas relief on this claim.

### C.  The Sentence

Petitioner's remaining claim challenges his sentence.  (*See* ECF No. 3 at Pg

ID 16-9.)  Petitioner did not raise his sentencing claim in the Michigan Court of

Appeals, and when he attempted to present the claim to the Michigan Supreme

Court, his application was rejected as untimely.  Thus, no state court has

adjudicated the claim on the merits, and this Court's review is *de novo*.  *See*

*Linscott v. Rose*, 436 F.3d 587, 592 (6th Cir. 2006) ("Under 28 U.S.C. § 2254(d), a

federal court applies *de novo* review to a petitioner's habeas claim if the claim was

not adjudicated on the merits in state court proceedings.")

The Court understands Petitioner to be saying that he was improperly

sentenced as a fourth habitual offender because the prosecutor counted his 1998

convictions for armed robbery, felon in possession of a firearm, and felony firearm as three separate convictions even though the convictions flowed from the same incident.  Petitioner contends that the prosecutor's decision to count these convictions as three separate convictions for purposes of the habitual offender statute was based on the retroactive application of the Michigan Supreme Court's decision in *People v. Gardner*, 753 N.W.2d 78 (Mich. 2008).  Petitioner asserts that this violated his rights under ex post facto laws.  (ECF No. 3 at Pg ID 16-19.)[3]

### 1.  Legal Framework

In Michigan, "[e]x post facto laws are prohibited by both the Michigan Constitution, Const. 1963, art. 1, § 10 ('no bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted'), and [the] United States Constitution, U.S. Const., art. I, § 10 ('no state shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts')."  *People v. Callon*, 662 N.W.2d 501, 507 (Mich. Ct. App. 2003); *see also* U.S. Const., art. I, § 9, cl. 3. ("No Bill of Attainder or ex post facto Law shall be passed.").

---

[3] Petitioner apparently believes that the state trial court also violated the law-of-the-case doctrine.  (ECF No. 3 at Pg ID 22-23.)  However, "[t]he defining feature of the law-of-the case doctrine is that it applies only within the same case." *Edmonds v. Smith*, 922 F.3d 737, 739 (6th Cir. 2019).  Petitioner's law-of-the-case argument appears to be based on decisions made in other criminal cases which support his argument about how to count prior convictions for purposes of the habitual offender statutes.  (*See* ECF No. 3 at Pg ID 17-19.)  Therefore, the law-of-the-case doctrine does not apply here.

"The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191 (1977) (internal and end citations omitted). "Nevertheless, the 'limitations on ex post facto judicial decisionmaking are inherent in the notion of due process.' Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause." *Hooks v. Sheets*, 603 F.3d 316, 321 (6th Cir. 2010) (internal and end citations omitted).

"[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (internal and end footnotes omitted). "The critical question is whether the law changes the legal consequences of acts completed before its effective date." *Id*. at 31. The following laws are considered *ex post facto*:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

17

*Peugh v. U.S.*, 569 U.S. 530, 538 (2013) (quoting *Calder v. Bull,* 3 U.S. 386, 390 (1798)).

## 2. Application

Petitioner's claim implicates the third type of ex post facto law, because it concerns Michigan's habitual offender statutes, which "establish escalating penalties for offenders who are repeatedly convicted of felonies." *Gardner*, 753 N.W.2d at 81; *see* Mich. Comp. Laws §§ 769.10(1), 769.11(1), and 769.12(1). The rule of law in question here is the Michigan Supreme Court's 2008 holding in *Gardner* that "[t]he unambiguous statutory language directs courts to count each separate felony conviction that preceded the sentencing offense, not the number of criminal incidents resulting in felony convictions. *Gardner*, 753 N.W.2d at 81. Stated differently, "Michigan's habitual offender laws clearly contemplate counting *each* prior felony conviction separately. The text of those laws does not include a same-incident test." *Id*. at 95 (emphasis in original).

In reaching its conclusion in *Gardner*, the Michigan Supreme Court overruled its decision in *People v. Stoudemire,* 414 N.W.2d 693 (1987), which held "that multiple convictions arising out of a single incident may count as only a single prior conviction for purposes of the [habitual offender] statute." *Id*. at 700. *Gardner* also overruled *People v. Preuss,* 461 N.W.2d 703 (1990), which "refined the *Stoudemire* holding," but "retained the rule 'that a defendant's prior offenses

18

must arise from separate incidents.'"  *Gardner*, 753 N.W.2d at 86-87 (quoting

*Preuss,* 461 N.W.2d at 713).

Petitioner favors the holdings in *Preuss* and *Stoudemire* and contends that

the trial court retroactively applied *Gardner* in violation of his ex post facto rights.

*Gardner*, however, was decided years *before* Petitioner's 2016 sentence for third-

degree CSC, and nothing in the Ex Post Facto Clause prohibits *prospective*

application of a new rule of law.  *See Carmell v. Texas*, 529 U.S. 513, 553 (2000).

In other words, there can be no *ex post facto* claim as to crimes that were

committed after a new law went into effect.  *Id*. at 519; *see also Callon*, 662

N.W.2d at 509 (2003) ("Simply put, there is no retroactive application of the law

where a prior conviction is used to enhance the penalty for a new offense

committed after the effective date of the statute.").  Furthermore, "the enhanced

sentencing of a recidivist does not constitute a new jeopardy or an additional

penalty for past crimes," *United States v. Ilacqua*, 562 F.2d 399, 404 (6th Cir.

1977) (citing *Gryger v. Burke*, 334 U.S. 728, 732 (1948)).

The fourth habitual statute was amended in 2012. The portion relevant to

this analysis which was raised by Petitioner in his amended petition (ECF No. 3),

reads as follows:

> (1) If a person has been convicted of any combination of
> 3 or more felonies or attempts to commit felonies,
> whether the convictions occurred in this state or would
> have been for felonies or attempts to commit felonies in

19

this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years.  Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

Mich. Comp. Laws § 769.12(1)(a) (footnote omitted).

Petitioner's three 1998 convictions which arose from the same transaction, were used at the no-contest plea to make out the factual basis to support his sentence as a fourth habitual offender for the conviction now on review.  (ECF No. 9-9 at Pg ID 157-158.)  The elements necessary to establish whether petitioner was a habitual offender under a state statute is a matter of state law.  *Phelps v. Vannatta*, 66 F. App'x 22, 25 (7th Cir. 2003); *accord Rodriguez v. Jones*, 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009) (concluding that a petitioner's claim about being sentenced as a habitual offender raised a state-law issue); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich. 2008) ("Petitioner's concerns regarding his sentence as a fourth habitual offender are state law claims.").  And "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court

20

may not issue the writ on the basis of a perceived error of state law."). When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

This Court may not use its own interpretation of Michigan law as a basis for declaring that Petitioner's right to due process was denied, and the Court may not "treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would become a federal constitutional question." *Gryger*, 334 U.S. at 731. For these reasons, Petitioner has no right to relief on this claim from this Court.

## IV.  Conclusion

Petitioner's claims are unexhausted and meritless. Further, the Michigan Court of Appeals' adjudication of Petitioner's first claim was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Petitioner's second claim lacks merit because he has not shown that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Accordingly,

**IT IS ORDERED** that the petition and amended petition for a writ of habeas corpus are **DENIED**.

21

**IT IS FURTHER ORDERED** that a certificate of appealability is

**DENIED** because Petitioner has not made "a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  Additionally, reasonable jurists

could not disagree with the Court's resolution of Petitioner's constitutional claims,

nor conclude that the issues presented deserve encouragement to proceed further.

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma

pauperis on appeal if he appeals this decision as he was permitted to proceed in

forma pauperis in this Court (ECF No. 4) and an appeal could be taken in good

faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

**IT IS SO ORDERED.**

s/ Linda V. Parker_____
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: September 29, 2021


I hereby certify that a copy of the foregoing document was mailed to counsel
of record and/or pro se parties on this date, September 29, 2021, by electronic
and/or U.S. First Class mail.

s/Aaron Flanigan_____
Case Manager